UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN SLOAN #288692,

  *Plaintiff*,

v.

DAVID SUMNER,

  *Defendant*.
_____/

CASE NO. 2:13-CV-12163

DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL ON THE 'OFFICIAL
CAPACITY' AND MENTAL/EMOTIONAL DAMAGE CLAIMS AND MOTION FOR
SUMMARY JUDGMENT ON THE REMAINING CLAIMS**
(Doc. 31)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Partial Dismissal on the 'Official Capacity' and Mental/Emotional Damage Claims and Motion for Summary Judgment on the Remaining Claims (Doc. 31) be **GRANTED**, and the case be dismissed in its entirety.

## II. REPORT

### A. Introduction

Plaintiff Steven Sloan, a state prisoner, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983 on May 15, 2013. (Doc. 1 at 1.) Plaintiff was incarcerated by the Michigan Department of Corrections ("MDOC") at Parnall Road Correctional Facility ("SMT") when the alleged Eighth Amendment violation occurred. (Doc. 31-2 at 8.) Defendant was a Resident Unit

Officer (RUO)[1] when the alleged assault took place. (Doc. 31-3 ¶ 2.) Plaintiff complains that Defendant violated his Eighth Amendment right to be free from excessive force by elbowing him in the side of his face, which he alleges caused permanent damage by significantly exacerbating his epilepsy symptoms. (Doc. 1 at 3.)

On May 5, 2014, Defendant filed this motion for partial dismissal and motion for partial summary judgment, contending that (1) Plaintiff's claim against Defendant in his official capacity should be dismissed because it is barred by the Eleventh Amendment; (2) any claims against the Defendant that argue for emotional/mental damage should be dismissed because the Prisoner Litigation Reform Act does not allow for § 1983 claims based solely on emotional damage; (3) Plaintiff failed to exhaust his remedies with respect to any claims he might be making regarding Defendant issuing misconduct reports; and (4) summary judgment is appropriate for Plaintiff's remaining Eighth Amendment claim because "there is no genuine issue as to any material fact on one or more essential element." (Doc. 31 at 2.) Plaintiff's response was due on or before May 27, 2014; no response was filed and no motion for an extension of time in which to file the response was filed. (Doc. 33 at 1.)

On April 24th, 2014, United States District Judge Nancy G. Edmunds referred all pretrial matters to undersigned magistrate judge. (Doc. 29 at 1.) The Defendant's motion is ready for report and recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(1).

B.   **Motion Standard**

Defendant has bifurcated his Motion into a partial motion to dismiss two claims and a partial motion for summary judgment on the remaining claim; however, the court has relied on

---

[1] The classification of RUO has been eliminated and Sumner is now a Correction Officer ("CO"). (Doc. 31-3 ¶ 2.)

2

documents outside of the pleadings, so the Motion will be considered in its entirety as a motion for summary judgment. A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**C.     Background**

In his complaint, Plaintiff alleges that "RUO/CO Sumner on 8/30/11 . . . hit me in the left side of my face with his elbow in a drunken rage." (Doc.1 at 3.) Plaintiff also complains that RUO Sumner forced him to move to the top bunk in the hope that he would have a seizure and fall out. (*Id.*) Plaintiff states that "RUM Western and C/O McWhirter had to get involved and tell [Defendant] to back off." (*Id.*) He also claims that he was denied medical treatment and instead was sent to intake on September 1, 2011 by RUM Western to "cover up the assault." (*Id.*) Plaintiff also complained that since the incident he is "[h]aving auras, dizziness to lighting, severe headaches, nausea, [and] vomiting[.] [He is] taking Dilantin for epilepsy[.] Excedrin Migraine [is] issued every day." (*Id.*)

Plaintiff filed two timely grievances regarding the 'elbowing' incident: One on August 30, 2011 and one on September 3, 2011. (Docs. 31-5 at 2; 31-6 at 2.) The grievances followed MDOC's grievance policy through to completion. *See* MDOC Policy Directive 03.02.130 (eff. July 9, 2007); (Doc. 31-7.) The first grievance, submitted on August 30, does not include any physical assault. (*Id.*) It alleges that on August 30 Defendant called Plaintiff an 'N'-word and spit in his face in order to incite Plaintiff into hitting Defendant. (Doc. 31-5 at 2.) In the second grievance, submitted on September 3, Plaintiff states that on September 1 "C/O Sumner attacked me, stalked

4

me, harassed me, racial[ly] assaulted me, [by] hitting me in my face with his elbow." (Doc. 31-6 at 2.) The grievance also alleges that after the assault Plaintiff went to speak to RUM Western and he was transferred to a different correctional facility. (*Id.*)

The September 1 grievance was investigated by Cheryl Bradshaw. (*Id.* at 3); *see also* (Affidavit of Cheryl Bradshaw, Doc. 31-4 ¶ 2.) The investigation information section of the "Step I Grievance Response form" states,

> Prisoner Sloan said RUO Sumner was working his housing unit when he stopped at his cubicle under the pretext of shaking him down. He stated he had a piece of paper in his hand where he was documenting RUO Sumner's actions. Prisoner said Sumner took the paper and read it. The paper had things like 7:35 AM Racist C/O Rounds; 8-30-11; 7:40, entries also include 8-31-11 6:10 chow hall "C/O Sumner once again racially assaulted me calling me boy." Sloan said he was ordered to pack up and move to a cube across the wall near the front and on the top bunk; while carrying his belongings to the new lock, RUO Sumner deliberately elbowed him in the face. He was being forced to move to a top bunk when he had a bottom bunk detail. He said he went back to his cubicle to collect the remainder of his property when Sumner yelled at him asking for his ID card. He told Sloan he was out of place: RUM Western intervened and told Sumner to 'back off' and allow the prisoner the opportunity to get his property: Other staff (RUO McWhirter), witnessed this incident. Prisoner Hamadanchi 417349 wrote a memorandum where he reported being shakendown by RUO Sumner. He said during this search prisoner Sloan was treated with overly aggressive behavior by Sumner. After the pat search was completed the prisoners were sent to the day room while the cubicle was shaken down. Once they returned, prisoner stated the officer made a motion to inmate Sloan saying you are the one that's a racist prisoner said that comment was made to prisoner Sloan because on a piece of paper prisoner Sloan had written down racist rounds and the officer had taken that paper and read it. RUO Sumner said he did shakedown the prisoners and their cubicle because they were acting suspicious, during the shakedown prisoner Sloan called him a bitch, said he did not like white people, he had a piece of paper in his hand and he read it, prisoner told him he was keeping track he said during his rounds, he told prisoner Sloan 'make sure you keep track.' He said he initiated the prisoner being moved to another cube for creating a disturbance and his attitude.

(*Id.*) In the "Summary" section it states,

> Information provided by prisoner Sloan and witnesses interviewed does not show prisoner was assaulted, the information received shows RUO D. Sumner was less

5

> than professional in performing his duties during his dealings with prisoner Sloan. RUO Sumner's actions resulted in the Resident Unit Manger of this housing unit transferring prisoner Sloan to the Cooper Street Correctional Facility on the date of the incident. There has been no evidence submitted by RUO Sumner supporting the allegation of prisoner Sloan creating a disturbance.

(*Id.*) Defendant denies any allegations that he was drunk or that he elbowed Plaintiff. (Doc. 31-3 ¶ 4.)

### D. Analysis

### 1. Official Capacity

A lawsuit "against a governmental officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, suing an MDOC employee in an official capacity is the same as suing the State of Michigan. The law is clear, however, that regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Since Congress has not abrogated Eleventh Amendment immunity by statute or expressly in § 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), I suggest that the claim against Defendant in his official capacity is barred by Eleventh Amendment immunity and should be dismissed.

### 2. Section 1983 Mental and Emotional Damages

The Prison Litigation Reform Act requires that any action for emotional injury suffered while in custody is barred unless the prisoner can show physical injury. 42 U.S.C. § 1997(e). The physical injury need not be significant, but it must be more than *de minimus* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). I suggest, therefore, that because Plaintiff never actually had to sleep on a top bunk, (*see* Doc. 31-2 at 31), his claim about being moved to a top bunk be dismissed as he could only have suffered emotional damage from this alleged threat. Likewise, because any damage from the spitting and verbal abuse would be emotional, this too would not amount to an Eighth Amendment violation and should be dismissed.

### 3. Misconduct Tickets

In Plaintiff's complaint, he states that Defendant "made false allegations that I was creating a disturbance and that I was out of place." (Doc. 1 at 3.) Defendant argues in his motion that no misconduct reports were issued by Defendant Sumner. (Doc. 31 at 4.) Defendant also contends that neither of Plaintiff's grievances included as their issue being grieved that he was given a misconduct report for creating a disturbance or for being out of place. (*Id.*) Defendant therefore asserts that, to the extent that Plaintiff is arguing that any of his constitutional rights were violated by misconduct reports issued by Defendant, the arguments are barred because Plaintiff failed to exhaust his remedies for those claims. (*Id.*)

The MDOC provides prisoners with a grievance procedure for their concerns and complaints. *See* MDOC Policy Directive 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of three steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. In *Woodford v. Ngo*, the Supreme Court held that

7

prisoners must properly exhaust their remedies by following prison policy before they could bring any § 1983 complaints in federal court. 548 U.S. 81, 84 (2006). Therefore, because Plaintiff never filed a grievance about the issue, I suggest that to the extent Plaintiff is arguing that Defendant violated any of his rights by issuing misconduct reports, he has failed to exhaust his remedies and those claims should be dismissed.

### 4. Eighth Amendment Claim

#### a. Governing Law

The Eighth Amendment "protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The first step in determining if an officer's conduct violates the Eighth Amendment is to identify the nature of the alleged constitutional violation: "[w]hat is necessary to establish an 'unnecessary and wanton infliction of pain' varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley*, 475 U.S. at 320). Eighth Amendment claims can arise not only from an official's acts but also from an official's omissions, and the standard applied varies accordingly. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he Eighth Amendment *places restraints* on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also *imposes duties* on these officials, who must [for example] provide humane conditions of confinement." (emphasis added)). Unlike the "deliberate indifference" standard, which applies in failure to attend to medical needs cases, an excessive force inquiry turns on "'whether [the] force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21). Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough'" that it

8

amounted to a constitutional violation, and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Id.* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

The objective prong integrates "contemporary standards of decency," and varying factual contexts into Eighth Amendment analyses. *Id.* at 8-9 (quoting *Whitley*, 475 U.S. at 327). The alleged harm must have been "sufficiently serious." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir 2011). In the excessive force context, "[w]hen "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated" regardless of whether a significant injury resulted. *Hudson*, 503 U.S. at 9. However not every "malevolent touch by a prison guard" rises to this level: "*[D]e minimus* uses of physical force" are not prohibited by the Eighth Amendment as long as they are not "'repugnant to the conscience of mankind.'" *Id.* (quoting *Estelle*, 429 U.S. 97, 106 (1976)). Excessive force cases should be decided "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010).

The subjective prong "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' Violations require a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834. In excessive force cases, the claimant must go beyond a showing of deliberate indifference, which courts have compared to recklessness, and demonstrate "that officials applied force 'maliciously and sadistically for the very purpose of causing harm,'" which is more akin to purposeful or knowing. *Id.* Factors include (1) the extent of the injury suffered, (2) "the need for the application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat 'reasonably perceived by the responsible officials," and (5) "'any efforts made to temper the severity of a forceful response.'" *See Hudson* 503 U.S. 1, 7 (providing factors "that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect

9

to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" (quoting *Whitley*, 475 U.S. at 321)). Indications that force is excessive include incidents of force applied with no "penological purpose," *see, e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), and punishment that is "grossly disproportionate to the offense, *Hutto v. Finney*, 437 U.S. 678, 685 (1978) (citing *Weems v. United States*, 217 U.S. 349, 367 (1910)). Whether a prison official "had the requisite knowledge . . . is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

### b. Eighth Amendment Analysis

For the objective prong, Plaintiff must show that the injury he sustained was objectively sufficiently serious. Plaintiff alleges that "RUO/CO Sumner on 8/30/11 . . . hit me in the left side of my face with his elbow in a drunken rage[,]" and that since the incident he is "[h]aving auras, dizziness to lighting, severe headaches, nausea, [and] vomiting[.]" (*Id.;* Doc. 31-2 at 41, 46.) Plaintiff's underlying condition of epilepsy is a serious medical condition. However, Plaintiff has not offered any medical or other evidence to support his allegation that his symptoms have actually been exacerbated or that any increase in symptoms was caused by Defendant's actions. Mere allegations of a resultant permanent injury and exacerbated symptoms are not enough by themselves. Plaintiff has not pointed to facts showing that the exacerbated epilepsy symptoms *were caused by the hitting*; such as, medical reports indicating increased prescriptions of migraine medicine due to his having been hit. Plaintiff did not respond to Defendant's motion, so there is no way of knowing if he ever sought medical treatment for the elbowing incident.

Further, according to Connie Ives**,** Health Unit Manager at SMT, there is no record of Plaintiff requesting or receiving "health care services for an**y** injury related to an elbow to the left jaw or cheek on or after August 30, 2011 or on or after September 1, 2011." (Affidavit of Connie

Ives, Doc. 31-8 ¶ 3.) She recognizes that Plaintiff transferred to JCS, but states that "if he made a request to a staff person that did not act upon his request, all he had to do was repeat the request to new staff in another area of the prison or simply walk over to the SMT Health Care Clinic himself." (*Id.*) She also notes that Plaintiff "did not make any request to JCS staff for emergency medical treatment for any alleged injury to his left jaw or cheek after he transferred. (*Id.*) Likewise, I suggest Plaintiff has failed to show a causal connection between any increased symptoms and the alleged assault.

Because plaintiff has not provided enough facts to create a genuine issue of material fact to support his allegations that the elbowing to the jaw exacerbated his symptoms, I suggest that he has failed to meet the objective prong of the Eighth Amendment analysis. *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013)("verifying medical evidence of an exacerbated injury [is] necessary to establish the objective prong" for alleged injuries that are not obvious). Therefore, even assuming that Plaintiff has shown Defendant's sufficiently culpable state of mind, i.e, that the elbowing served no legitimate penological purpose, Plaintiff has failed to meet the requisite objective prong. Accordingly, Defendant's motion for summary judgment should be granted.

### D. Conclusion

For the reasons laid out above, I suggest that Defendants' Motion for Partial Dismissal on the 'Official Capacity' and Mental/Emotional Damage Claims and Motion for Summary Judgment on the Remaining Claims be granted and that the case be dismissed in its entirety.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific

11

written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

      Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 10, 2014                                 /S PATRICIA T. MORRIS
                                                           Patricia T. Morris
                                                           United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record. A hard copy was served by first class mail on Steven Sloan, #288692, G. Robert Cotton Correctional Facility, 3500 N. Elm Rd., Jackson, MI, 49201; and in the traditional manner on District Judge Edmunds.

Date: July 10, 2014                      By      s/*Jean L. Broucek*
                                                        Case Manager to Magistrate Judge Morris